# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERTO ORTEGA-MENDEZ,
                    *Petitioner,*

v.

ALBERTO R. GONZALES,* Attorney
General,
                    *Respondent.*

No. 03-74711

Agency No.
A76-345-757

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 6, 2006—San Francisco, California

Filed June 15, 2006

Before: David R. Thompson, Marsha S. Berzon, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Berzon

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Federal Rule of Appellate Procedure 43(c)(2).

**COUNSEL**

James F. Smith, Davis, California, and Christopher J. Todd, Mill Valley, California, for the petitioner.

Alison R. Drucker and Margaret J. Perry, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

BERZON, Circuit Judge:

An Immigration Judge (IJ) determined that Roberto Ortega-Mendez's 1998 conviction for battery under California Penal Code section 242 was a "crime of domestic violence" within the meaning of 8 U.S.C. § 1227(a)(2)(E)(i). As a result, the IJ declared Ortega-Mendez ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1) as an alien who has "been convicted of an offense under section . . . 1227(a)(2)." 8 U.S.C. § 1229b(b)(1)(C). Ortega-Mendez, a native and citizen of Mexico, petitions for review of a decision of the Board of Immigration Appeals (BIA) affirming the IJ's decision.

For an offense to be a "crime of domestic violence" within the meaning of 8 U.S.C. § 1227(a)(2)(E)(i), it must, inter alia, be a "crime of violence" within the meaning of 18 U.S.C. § 16. *See* 8 U.S.C. § 1227(a)(2)(E)(i). We hold that battery under California Penal Code section 242 is not categorically a "crime of violence" within the meaning of 18 U.S.C. § 16. The government does not contend that we should reach a different result regarding whether Ortega-Mendez's 1998 offense is a "crime of violence" under the modified categorical approach. We therefore conclude that Ortega-Mendez's 1998 offense is not a "crime of violence" within the meaning of 18 U.S.C. § 16 and so is not a "crime of domestic violence" within the meaning of 8 U.S.C. § 1227(a)(2)(E)(i).

## I.

Ortega-Mendez entered the United States without inspection around 1986. In 1998, he pleaded nolo contendere to battery under California Penal Code section 242.[1] Shortly

---

[1]The documents of conviction establish that Ortega-Mendez was convicted of battery under California Penal Code section 242. Simple battery — battery committed without any aggravating circumstances — is pun-

thereafter the Immigration and Naturalization Service (INS) filed a Notice to Appear, charging Ortega-Mendez with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without having been admitted or paroled. Ortega-Mendez conceded removability but applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1), or, in the alternative, voluntary departure.

The INS subsequently moved to pretermit the application for cancellation of removal, arguing that Ortega-Mendez's 1998 battery conviction was a "crime of domestic violence" within the meaning of 8 U.S.C. § 1227(a)(2)(E)(i). An alien is ineligible for cancellation of removal under § 1229b(b)(1)(C) if he has been "convicted of an offense under section . . . 1227(a)(2)." 8 U.S.C. § 1229b(b)(1)(C).

The IJ granted the INS's motion. The IJ found, first, that Ortega-Mendez's 1998 battery offense was a "crime of violence" within the meaning of 18 U.S.C. § 16(a), reasoning:

> Subparagraph A of [18 U.S.C. § 16] defines a crime of violence as an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another. Turning to California Penal Code Section 242, under which the respondent was convicted, that section defines battery as any willful and unlawful use of force or violence upon the person of another.
>
> Having compared Subparagraph A of 18 U.S.C. Section 16 and battery as it is defined in Section 242

---

ished pursuant to California Penal Code section 243(a). The government disputes whether Ortega-Mendez's conviction was for simple battery, punishable under section 243(a), or for "domestic" battery, punishable under section 243(e). Whether Ortega-Mendez's conviction was for simple battery or for domestic battery is not, however, relevant to the issue we decide. Section 243(e) adds only the "domestic" feature, not pertinent to our conclusion.

of the California Penal Code, the Court concludes that the respondent's conviction meets the definition of a crime of violence as it is defined in the U.S. Code.

The IJ then found that the documents of conviction established that the 1998 offense was "domestic" in nature. She concluded that Ortega-Mendez's 1998 offense was a "crime of domestic violence" within the meaning of § 1227(a)(2)(E)(i), and thus that Ortega-Mendez was ineligible for cancellation of removal under § 1229b(b)(1). She did, however, grant Ortega-Mendez voluntary departure.

The BIA affirmed in a streamlined decision. Ortega-Mendez timely petitions for review of that decision. He argues that his 1998 battery conviction was not a "crime of violence" within the meaning of 18 U.S.C. § 16 and therefore was not a "crime of domestic violence" within the meaning of 8 U.S.C. § 1227(a)(2)(E)(i). We agree with Ortega-Mendez and therefore grant the petition.[2]

## II.

Our jurisdiction is governed by 8 U.S.C. § 1252. Section 1252(a)(2)(B)(i) states that "except as provided in subparagraph (D), . . . no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b . . . of this title." Section 1252(a)(2)(D) provides that "[n]othing in subparagraph (B) . . . shall be construed as precluding review of . . . questions of law raised upon a petition for review filed with an appropriate court of appeals."[3] Whether Ortega-Mendez's 1998 offense is a "crime

---

[2]In view of our holding, we do not reach Ortega-Mendez's claim that his 1998 offense was not a "crime of domestic violence" because it was not "domestic" in nature.

[3]Section 1252(a)(2)(D) was added by the REAL ID Act of 2005, div. B, Pub. L. No. 109-13, § 106(a)(1)(A)(iii), 119 Stat. 231, 310, and applies

of violence" within the meaning of 18 U.S.C. § 16 and hence can be a "crime of domestic violence" within the meaning of 8 U.S.C. § 1227(a)(2)(E)(i) is a question of law. *See United States v. Trinidad-Aquino*, 259 F.3d 1140, 1142 (9th Cir. 2001). We therefore have jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D) to decide that question. *See Lisbey v. Gonzales*, 420 F.3d 930, 932 (9th Cir. 2005).

Because the BIA streamlined the case, we review the IJ's opinion as the final agency decision. *See Falcon Carriche v. Ashcroft*, 350 F.3d 845, 849 (9th Cir. 2003). We do not defer to BIA interpretations of state law or of provisions of the federal criminal code referenced within, but not part of, the Immigration and Nationality Act. *See Parrilla v. Gonzales*, 414 F.3d 1038, 1041 (9th Cir. 2005); *Singh v. Ashcroft*, 386 F.3d 1228, 1230-31 (9th Cir. 2004).

## III.

### A.

**[1]** Under 8 U.S.C. § 1229b(b)(1)(C), an alien who is not a legal permanent resident is ineligible for cancellation of removal if he has been "convicted of an offense under section . . . 1227(a)(2) . . . of this title, subject to paragraph (5)."**⁴** Section 1227(a)(2)(E)(i), the subsection of § 1227(a)(2) pertinent here, provides as follows:

---

to the present case, *see id.* § 106(b), 119 Stat. at 311 (stating that the amendments made by § 106(a), which include the addition of § 1252(a)(2)(D), "shall take effect upon the date of the enactment of this division and shall apply to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment of this division").

**⁴**The exception in paragraph (5) is not applicable in the present case, as it applies only to victims of domestic violence. *See* 8 U.S.C. §§ 1229b(b)(5), 1227(a)(7).

> Any alien who at any time after admission is convicted of a crime of domestic violence . . . is deportable. For purposes of this clause, the term "crime of domestic violence" means any crime of violence (as defined in section 16 of Title 18) against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabiting with or has cohabited with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.

8 U.S.C. § 1227(a)(2)(E)(i). An individual convicted of a "crime of domestic violence" within the meaning of § 1227(a)(2)(E)(i) is ineligible for cancellation of removal pursuant to § 1229b(b)(1)(C) whether or not he was admitted to the United States at the time of his predicate offense. *See Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649, 653 (9th Cir. 2004).

**[2]** In *Tokatly v. Ashcroft*, we observed that to determine whether an individual was convicted of a "crime of domestic violence" within the meaning of § 1227(a)(2)(E)(i), we must conclude (1) "that [the] crime was . . . one of 'violence,' " and (2) "that the violence was 'domestic' within the meaning of that section." 371 F.3d 613, 619 (9th Cir. 2004). For the former inquiry, § 1227(a)(2)(E)(i) directs us to determine whether the offense at issue is a "crime of violence" within the meaning of 18 U.S.C. § 16. *See* 8 U.S.C. § 1227(a)(2)(E)(i) (stating that to qualify as a "crime of domestic violence," a crime must be, inter alia, a "crime of violence (as defined in section 16 of Title 18)").

The government argues that Ortega-Mendez's 1998 battery offense is a "crime of violence" because battery under California Penal Code section 242 is categorically a "crime of violence" within the meaning of 18 U.S.C. § 16. Applying the categorical approach as established in *Taylor v. United States*, 495 U.S. 575 (1990), we disagree.

**[3]** Under 18 U.S.C. § 16, a "crime of violence" is

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

When the predicate offense at issue is an offense under state law, our prior cases have been less than clear about how the word "felony" in § 16(b) is defined. On the one hand, "Congress has a longstanding practice of equating the term 'felony' with offenses punishable by more than one year's imprisonment." *United States v. Robles-Rodriguez*, 281 F.3d 900, 904 (9th Cir. 2002); *see also* 18 U.S.C. § 3559(a) (providing that unless otherwise indicated, a federal offense is a felony if and only if it is punishable by a term of imprisonment exceeding one year); *United States v. Olvera-Cervantes*, 960 F.2d 101, 103-04 (9th Cir. 1992) (interpreting the word "felony" as used in a prior version of U.S.S.G. § 2L1.2, which did not expressly define that term, to be "a conviction under a statute, state or federal, with a statutory maximum penalty in excess of one year"); *cf. United States v. Alvarez-Gutierrez*, 394 F.3d 1241, 1244-45 (9th Cir. 2005) (holding that an "aggravated felony" need not be punishable by imprisonment exceeding one year because the relevant statute provided a

definition of "aggravated felony" that did not include such a requirement). On the other hand, many of our cases justify their holdings regarding the applicability of § 16(b) by citing state statutes that indicate how the relevant predicate offense is classified under state law, suggesting that an offense is a "felony" for purposes of § 16(b) if it is so designated by state law. *See, e.g.*, *Singh*, 386 F.3d at 1231 n.3 (observing that Oregon law designates harassment a misdemeanor and concluding that § 16(b) was inapplicable); *see also, e.g.*, *Lisbey*, 420 F.3d at 932; *United States v. Campos-Fuerte*, 357 F.3d 956, 959 (9th Cir. 2004), *amended by* 366 F.3d 691 (9th Cir. 2004).[5]

[4] We need not decide which of these competing definitions is correct. Under either definition, Ortega-Mendez's offense is not a "felony." The offense is not a felony under the residual federal definition because the maximum term of imprisonment authorized for simple battery under section 242 is six months. *See* CAL. PENAL CODE § 243(a). It is also not a felony under California law. *See* CAL. PENAL CODE § 17(a) (classifying an offense as a felony if it is "punishable with death or by imprisonment in the state prison"); *id.* § 243(a) (stating that simple battery is punishable by a fine, by imprisonment in county jail not exceeding six months, or by both).[6]

---

[5]One of our sister circuits has held that a state-law offense is not a "felony" within the meaning of § 16(b) if it is not so designated under state law. *See Francis v. Reno*, 269 F.3d 162, 166-71 (3d Cir. 2001). Also, in *Doe v. Hartz*, the Eighth Circuit addressed the meaning of the word "felony" in the definition of "crime of violence" under the Violence Against Women Act. *See* 134 F.3d 1339, 1342-43 (8th Cir. 1998). *Doe* postulated a hybrid approach, defining "felony" with reference to federal law if the underlying crime was punishable under federal law and with reference to state law if the underlying crime was not punishable under federal law. *See id.* at 1343. This complicated approach has no support in our case law.

[6]In *People v. Benavides*, the California Supreme Court stated that "[a] battery is deemed to be a felony unless specifically designated as a misdemeanor by either the prosecution or the court." 35 Cal. 4th 69, 103 (2005). Although the court did not spell out what it meant in this regard, we note that there are statutory sections allowing for punishment of certain kinds of battery as felonies. *See, e.g.*, CAL. PENAL CODE § 243(c)-(d). When, as here, simple battery is at issue, the prosecution and court have effectively "designated" the battery charge to be a misdemeanor.

Thus, under either definition of "felony," Ortega-Mendez's offense was not a felony, and § 16(b) does not apply.**[7]**

**B.**

**[5]** The relevant question is therefore whether Ortega-Mendez's 1998 battery offense was "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," within the meaning of § 16(a). In *Leocal v. Ashcroft*, the Supreme Court emphasized that "[i]n construing both parts of § 16, we cannot forget that we ultimately are determining the meaning of the term 'crime of *violence*' " and noted that "[t]he ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of *violent*, active crimes." 543 U.S. 1, 11 (2004) (emphasis added). Consistent with *Leocal*, we have "squarely held that the force necessary to constitute a crime of violence [under 18 U.S.C. § 16(a)] must actually be violent in nature." *Singh*, 386 F.3d at 1233 (internal quotation marks omitted)).

**[6]** The statutory definition of battery under California Penal Code section 242 is "any willful and unlawful use of force or violence upon the person of another." At first blush, section 242 may appear to have as an element the "use . . . of physical force," 18 U.S.C. § 16(a), and to describe a crime "violent in nature," *Singh*, 386 F.3d at 1233 (internal quotation marks omitted), given that it requires "use of force or violence," CAL. PENAL CODE § 242. One could also view that language, standing alone, otherwise. "[F]orce *or* violence," *id.* (emphasis added), indicates that nonviolent force suffices; otherwise the "or" has no function.

---

**[7]**The same result obtains even if Ortega-Mendez's conviction was for domestic battery under sections 242 and 243(e). *See* CAL. PENAL CODE § 243(e) (stating that domestic battery is punishable by a fine, by imprisonment in county jail for a period of not more than one year, or by both).

**[7]** In any event, in determining the categorical reach of a state crime, we consider not only the language of the state statute, but also the interpretation of that language in judicial opinions. *See United States v. Bonat*, 106 F.3d 1472, 1475-76 (9th Cir. 1997) (holding that notwithstanding the fact that a state statute "on its face" met the definition of generic burglary, the state statute was not categorically a "generic burglary," because "the courts ha[d] expanded the statute beyond generic burglary"). Looking at how California courts have interpreted the phrase "use of force or violence" in section 242, it becomes evident that the phrase is a term of art, requiring neither a force capable of hurting or causing injury nor violence in the usual sense of the term.

In *People v. Page*, a California court recently noted, "even though the statutory definition of battery requires 'force or violence' (Pen. Code, § 242), this has the special legal meaning of a harmful or offensive touching." 123 Cal. App. 4th 1466, 1473 n.1 (2004). That interpretation of section 242 has a considerable pedigree. The California Supreme Court explained in *People v. Colantuono*:

> It has long been established, both in tort and criminal law, that the least touching may constitute battery. In other words, *force* against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark.

7 Cal. 4th 206, 214 n.4 (1994) (internal quotation marks omitted) (quoting *People v. Rocha*, 3 Cal. 3d 893, 899 n.12 (1971)); *see also People v. Ausbie*, 123 Cal. App. 4th 855, 860 n.2 (2004) (observing that "[o]nly a slight unprivileged touching is needed to satisfy the force requirement of a criminal battery"). Because the "least touching" may constitute battery, *People v. Mansfield* observed that in section 242, "[t]he word 'violence' has no real significance." 200 Cal. App. 3d 82, 87-88 (1988). Consonant with these general statements,

California courts have held that conduct such as "throwing a cup of urine in a person's face," *People v. Pinholster*, 1 Cal. 4th 865, 961 (1992), and making unwanted sexual advances involving touching, *County of Santa Clara v. Willis*, 179 Cal. App. 3d 1240, 1251 (1986), constitutes battery.[8]

[8] We have held that conduct involving mere offensive touching does not rise to the level of a "crime of violence" within the meaning of 18 U.S.C. § 16(a). *Singh* held that harassment under an Oregon statute was not a "crime of violence" within the meaning of § 16(a) because the statute encompassed nonviolent acts such as "spitting on another" and "[i]ndirect physical contacts such as 'hitting another with a thrown missile, poking another with a stick or . . . striking the clothing rather than the flesh of the victim.' " 386 F.3d at 1232 (internal quotation marks omitted). In so holding, *Singh* noted that "the Oregon harassment offense, harkening back to the ancient common law of battery, can be made out based on an ephemeral touching, so long as it is offensive." *Id.* at 1233 (footnote omitted).

---

[8]The relevant California jury instruction comports with this case law. The jury instruction defining "force or violence" in section 242 states:

> As used in the foregoing instruction, the words "force" and "violence" are synonymous and mean any [unlawful] application of physical force against the person of another, even though it causes no pain or bodily harm or leaves no mark and even though only the feelings of such person are injured by the act. The slightest [unlawful] touching, if done in an insolent, rude, or an angry manner, is sufficient.

> It is not necessary that the touching be done in actual anger or with actual malice; it is sufficient if it was unwarranted and unjustifiable.

> The touching essential to a battery may be a touching of the person, of the person's clothing, or of something attached to or closely connected with the person.

California Jury Instructions - Criminal 16.141.

**[9]** In *Lisbey*, we determined that sexual battery under California Penal Code section 243.4(a) is not categorically a "crime of violence" within the meaning of § 16(a). 420 F.3d at 932. Section 243.4(a) provides that

> [a]ny person who touches an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of sexual battery.

CAL. PENAL CODE § 243.4(a). We noted that section 243.4(a) "has no requirement of actual or threatened physical force and is therefore not a 'crime of violence' within the meaning of § 16(a)." *Lisbey*, 420 F.3d at 932.

**[10]** *Lisbey* is significant not only because it addresses the level of violence necessary to qualify as a "crime of violence," but also because its specific holding concerns section 243.4(a). Battery under section 242 is a lesser included offense of sexual battery under section 243.4(a). *See In re Keith T.*, 156 Cal. App. 3d 983, 988 (1984) (holding that battery under section 242 is a lesser included offense of sexual battery under an earlier version of section 243.4, which included the language of what is now section 243.4(a)). Because battery under section 242 is a lesser included offense of sexual battery under section 243.4(a), and because under *Lisbey*, sexual battery under section 243.4(a) is not categorically a "crime of violence" within the meaning of § 16(a), it follows that battery under section 242 is not categorically a "crime of violence" within the meaning of § 16(a).

The result we reach is consonant with this and other courts' holdings regarding whether materially similar battery offenses under other statutes are "crimes of violence" within the meaning of § 16(a) and other similar statutory provisions. *See United States v. Lopez-Montanez*, 421 F.3d 926, 930-31 (9th

Cir. 2005) (holding that sexual battery under California Penal Code section 243.4(a) is not categorically a "crime of violence" under U.S.S.G. § 2L1.2, cmt. n. 1(B)(ii)(I) (2002), which is identical to § 16(a) in all material respects); *Flores v. Ashcroft*, 350 F.3d 666, 669-70 (7th Cir. 2003) (holding that battery under Indiana law is not a "crime of violence" within the meaning of 18 U.S.C. § 16); *United States v. Belless*, 338 F.3d 1063, 1067-68 (9th Cir. 2003) (holding that a Wyoming statute criminalizing, inter alia, "unlawfully touch[ing] another in a rude, insolent or angry manner" "embraces conduct that does not involve 'use or attempted use of physical force' " within the meaning of 18 U.S.C. § 921(a)(33)(A)(ii), where "physical force" under § 921(a)(33)(A)(ii) has been interpreted to mean "the violent use of force against the body of another individual").

## C.

The government argues that under *United States v. Robinson*, 967 F.2d 287 (9th Cir. 1992), we are constrained to hold, contrary to the reasoning we have just developed, that battery under section 242 *is* a "crime of violence" within the meaning of § 16(a). We do not agree.

*Robinson* addressed whether battery under California Penal Code section 242 was a "crime of violence" within the meaning of U.S.S.G. § 4B1.1 (1989).[9] *See id.* at 292-94. Section 4B1.1 referred to § 4B1.2 for a definition of "crime of violence," which defined that term as

> any offense under federal or state law punishable by imprisonment for a term exceeding one year that —
>
> > (i) has an element the use, attempted use, or

---

[9]Unless otherwise indicated, all citations to §§ 4B1.1 and 4B1.2 are to the 1989 edition of the Guidelines, published in November 1989.

threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1). *Robinson* held that battery under section 242 was a "crime of violence" within the meaning of §§ 4B1.1 and 4B1.2, reasoning, in full, as follows:

In this case, battery includes as an element "the willful and unlawful use of force or violence upon the person of another." CAL. PENAL CODE § 242 (West 1988). We therefore conclude that battery on a peace officer, the crime for which Robinson was convicted, is a crime of violence for the purposes of determining Robinson's career offender status under U.S.S.G. § 4B1.1.

967 F.2d at 293-94. As is apparent, *Robinson* did not consider the line of cases regarding the reach of section 242 that culminated, two years after *Robinson*, in the California Supreme Court's *Colantuono* decision, which observed:

It has long been established, both in tort and criminal law, that the least touching may constitute battery. In other words, *force* against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark.

7 Cal. 4th at 214 n.4 (internal quotation marks omitted).

Although the government is correct that *Robinson* held that battery under section 242 is a "crime of violence" within the meaning of §§ 4B1.1 and 4B1.2 and appeared to reach that

conclusion by applying § 4B1.2(1)(i), which is identical in all material respects to § 16(a),[10] we are not bound by *Robinson* in the present case. As *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc), explained, a three-judge panel may not itself overrule a prior decision of the court, *id.* at 899, but "where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority," *id.* at 893, three-judge panels "should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled," *id.* at 900. We are " 'bound not only by the holdings of [such intervening] decisions but also by their 'mode of analysis.' " *Gill v. Stern* (*In re Stern*), 345 F.3d 1036, 1043 (9th Cir. 2003) (quoting *Miller*, 335 F.3d at 900)). "Intervening higher authority" includes intervening decisions of the Supreme Court, *Miller*, 335 F.3d at 900, and of this court sitting en banc, *Overstreet v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 1506*, 409 F.3d 1199, 1205 n.8 (9th Cir. 2005).

Because *Robinson*'s discussion of battery as a "crime of violence" is brief, it is difficult to discern the reasoning underlying its holding. That the *Robinson* court cited no case law suggests that that court assumed that only statutory language — not case law — is relevant to determining whether battery is a "crime of violence." Furthermore, regardless of whether the *Robinson* court so assumed, that court *certainly* assumed that "crimes of violence" need not be violent in nature under § 16(a). After all, if the *Robinson* court did look to California case law, it could not have held that battery is a "crime of violence" without making this assumption, given that pre-

---

[10]The only difference between U.S.S.G. § 4B1.2(1)(i) and 18 U.S.C. § 16(a) is that the latter provision includes "physical force against the person *or property* of another," § 16(a) (emphasis added), whereas the former provision includes only "physical force against *the person* of another," § 4B1.2(1)(i) (emphasis added). *See United States v. Charles*, 301 F.3d 309, 311-12 (5th Cir. 2002) (describing all of the differences between § 4B1.2 and § 16).

*Robinson* case law clearly established that battery encompassed mere offensive touching, *see, e.g.*, *Rocha*, 3 Cal. 3d at 899 n.12. And, if the *Robinson* court looked to the statutory text alone, it still could not have held that battery is a "crime of violence" without making this assumption, as section 242 defines battery as "any willful and unlawful use of force *or* violence upon the person of another," CAL. PENAL CODE § 242 (emphasis added), suggesting that battery encompasses use of force that is not violent. Thus, the *Robinson* court may have assumed that it need not examine case law in conducting the "crime of violence" inquiry, and it certainly assumed that "crimes of violence" need not be violent in nature. Both assumptions are, however, clearly irreconcilable with intervening higher authority.

The first assumption — that a court may conclude that section 242 is a "crime of violence" on the basis of an examination of the statutory language alone — is clearly irreconcilable with *United States v. Corona-Sanchez*, 291 F.3d 1201, 1203 (9th Cir. 2002) (en banc), and *United States v. Rivera-Sanchez*, 247 F.3d 905, 908-09 (9th Cir. 2001) (en banc), both of which were decided by this court sitting en banc after *Robinson.* In those cases, we stated that under the *Taylor* categorical approach, our inquiry must focus on whether the statute of conviction proscribed any *conduct* not included in the relevant federal definition. *See Corona-Sanchez*, 291 F.3d at 1203 ("If the statute criminalizes conduct that would not constitute an aggravated felony under federal sentencing law, then the conviction may not be used for sentence enhancement unless the record includes documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes." (internal quotation marks omitted)); *Rivera-Sanchez*, 247 F.3d at 908 ("[I]f the statute and the judicially noticeable facts would allow the defendant to be convicted of an offense other than that defined as a qualifying offense by the guidelines, then the conviction does not qualify as a predicate offense." (internal quotation marks omitted)).

We cannot conclude that all conduct proscribed by a statute falls within the purview of a federal definition — the inquiry *Corona-Sanchez* and *Rivera-Sanchez* require — without considering the case law interpreting the statute. Indeed, in *Corona-Sanchez* and *Rivera-Sanchez*, we looked not just to the text of the relevant statutes of conviction, but also to case law interpreting those statutes to determine whether all conduct proscribed by the statutes was within the ambit of the relevant federal definition. *See Corona-Sanchez*, 291 F.3d at 1207-08 (concluding that an offense under a California statute was not categorically an offense meeting the relevant federal definition and relying, in part, on California case law interpreting the California statute); *Rivera-Sanchez*, 247 F.3d at 908-09 (same). Thus, to the extent that *Robinson* assumed it appropriate to declare an offense a "crime of violence" by examining the statutory text alone, its assumption has been rejected by our en banc decisions in *Corona-Sanchez* and *Rivera-Sanchez*.

The second assumption — that a "crime of violence" need not actually be "violent" in nature — is clearly irreconcilable with *Leocal*, decided by the Supreme Court after *Robinson*. *Leocal* emphasized that "crimes of violence" must actually be "violent" in nature, stating that "§ 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of *violent, active* crimes." 543 U.S. at 11 (emphasis added). Thus, *Robinson*'s assumption that "crimes of violence" need not be violent in nature is clearly irreconcilable with the reasoning and theory in *Leocal*.

In sum, we cannot follow *Robinson* because that opinion necessarily rested on at least one assumption that is clearly irreconcilable with intervening higher authority. We therefore hold that battery under section 242 is not categorically a "crime of violence" within the meaning of 18 U.S.C. § 16(a).

**IV.**

**[11]** Ortega-Mendez contends that if we conclude that battery is not categorically a "crime of violence," our inquiry is over, and we should not consider whether the documents of conviction establish that his 1998 battery offense was a "crime of violence" under the modified categorical approach outlined in *Taylor*. Ortega-Mendez suggested that such a result follows from our decision in *Singh*, which held that harassment under Oregon law was not a "crime of violence" without engaging in analysis under the modified categorical approach. *See* 386 F.3d at 1231-34.

**[12]** *Singh* did not *reject* the modified categorical approach with respect to crimes of violence. Rather, *Singh* simply did not mention that approach. This silence indicates that, as here, the government did not argue that a different result would have obtained under the modified categorical approach, presumably because there were no record documents that could have established that the conviction was for a crime of violence.

This understanding of *Singh* is confirmed by *Tokatly*. We stated in *Tokatly* "that the *Taylor v. United States* categorical and modified categorical approach is applicable to [§ 1227(a)(2)(E)(i)] *in its entirety*," explaining that in "[a]pplying *Taylor*, a court may not look beyond the record of conviction to determine *whether an alien's crime was one of 'violence,'* or whether the violence was 'domestic' within the meaning of the provision." *See* 371 F.3d at 624 (emphasis added) (citation omitted).[11]

**[13]** We have no occasion to address how the modified cat-

---

[11]In *Tokatly*, the parties did not dispute that the offense at issue was in fact a crime of "violence," so we did not have occasion to apply the modified categorical principles to the "violence" prong in that case. *See* 371 F.3d at 619.

egorical approach might apply in the present case, as the government's sole argument for why Ortega-Mendez's 1998 battery offense was a "crime of violence" is that battery under section 242 is categorically a "crime of violence." The government does not contend that any documents of conviction establish additional facts relevant to the inquiry. Nor could it, as the only documents of conviction are (1) the information charging Ortega-Mendez with offenses under California Penal Code sections 273.5(a) and 262, (2) a minute order stating that Ortega-Mendez "entered a plea of . . . nolo contendere . . . to the charges of: 242 pc — misd," and (3) a minute order describing Ortega-Mendez's sentence. These documents will not support a determination that Ortega-Mendez's underlying criminal act was "necessarily" violent, as required by *Shepard v. United States*, 544 U.S. 13, 21 (2005).

## V.

**[14]** For the foregoing reasons, we hold that Ortega-Mendez's 1998 battery offense is not a "crime of violence" within the meaning of 18 U.S.C. § 16(a) and thus not a "crime of domestic violence" within the meaning of 8 U.S.C. § 1227(a)(2)(E)(i). The BIA therefore erred in determining that Ortega-Mendez was ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C) on the ground that his 1998 offense was a "crime of domestic violence" within the meaning of § 1227(a)(2)(E)(i).

We grant Ortega-Mendez's petition. Because the agency did not determine whether Ortega-Mendez was otherwise statutorily eligible for cancellation of removal, we remand for a determination of that question, and, if he is eligible, for a determination of whether the agency should, as a matter of discretion, grant him relief. *See INS v. Ventura*, 537 U.S. 12, 16-18 (2002).

**PETITION GRANTED; REMANDED.**